UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| **RUBY P. SAUNDERS,** | ) |
| Plaintiff, | ) Case No. CV08-8432 AJW |
| v. | ) MEMORANDUM OF DECISION |
| **MICHAEL J. ASTRUE,** **Commissioner of the Social Security Administration,** | ) |
| Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The parties are familiar with the procedural facts, which are summarized in the Joint Stipulation. [See JS 2]. In a June 23, 2008 written hearing decision that constitutes the Commissioner's final decision in this case, the ALJ concluded that plaintiff was not disabled because she could perform her past relevant work. [Administrative Record ("AR") 33-35].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial

evidence or is based on legal error. Stout v. Comm'r Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Medical opinion evidence**

Plaintiff contends that the ALJ erred in rejecting the opinion of a treating physician Robert S. Pashman, M.D. [See JS 4-17].

The ALJ found that plaintiff has severe impairments consisting of disc disease of the lumbar spine, status post hemi-laminectomy on October 29, 2003, idiopathic scoliosis of the thoracolumbar spine, and degenerative joint disease of the left knee, status post arthroscopic surgery on January 18, 2006. [AR 23].

A treating physician's opinion is not binding on the Commissioner with respect to the existence of an impairment or the ultimate issue of disability. Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir. 2001). Where, however, a treating physician's medical opinion as to the nature and severity of an individual's impairment is well-supported and not inconsistent with other substantial evidence in the record, that opinion is entitled to controlling weight. Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir. 2001); Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir. 2001); see 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2. Even when not entitled to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed" in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other evidence in the record; and (6) the area of specialization. Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-

2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

The ALJ must provide clear and convincing reasons, supported by substantial evidence in the record, for rejecting an uncontroverted treating source opinion. If contradicted by that of another doctor, a treating or examining source opinion may be rejected for specific and legitimate reasons that are based on substantial evidence in the record. Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995). "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." Lester, 81 F.3d at 831.

The ALJ found that plaintiff retained the residual functional capacity ("RFC") for light work, except that she could stand or walk for a total of two hours in an eight-hour day, must be permitted to alternate sitting and standing to relieve pain or discomfort, and was limited to occasional bending and stooping. [AR 32]. In making that determination, the ALJ rejected a May 10, 2004 assessment by Dr. Pashman, the "Director of Scoliosis and Spinal Deformity" at the Cedars-Sinai Institute for Spinal Disorders. [See AR 279-280]. On that date, Dr. Pashman signed a completed assessment form entitled "Attending Physician's Statement of Impairment and Function." [AR 279-280]. That form bears the logo of "ING Employee Benefits," and it includes the following statement: "The patient is responsible for the completion of this form without expense to the employer." [AR 279]. Dr. Pashman provided the following information on that form. Plaintiff had a primary diagnosis of adult idiopathic scoliosis, with additional diagnoses of adult fractional lumbosacral curve and clinical severe left L-5 radiculopathy. [AR 27, 279]. Plaintiff's subjective symptoms were low back pain and leg pain, with an objective finding of "scoliosis." MRIs of the lumbar spine were obtained on January 2, 2003 and October 23, 2003, as well as "various x-rays" on January 14, 2003 and October 29, 2003. [AR 279]. Those diagnostic tests showed degenerative disc disease at L4-S1. Plaintiff underwent surgery, a hemi-laminectomy at L5, on October 29, 2003. Dr. Pashman advised plaintiff to stop working as of that date. [AR 279]. Plaintiff's current treatment plan entailed physical therapy two to three times a week. Plaintiff was compliant with, and exhibited good tolerance to, physical therapy. [AR 273]. With respect to the period from October 29, 2003 (the date of plaintiff's surgery) through November 29, 2004, Dr. Pashman opined that plaintiff could lift less than ten pounds occasionally and could sit, stand, or walk for less than one hour each. [AR 279-280]. Those restrictions indicate that plaintiff could not

1  perform the full range of sedentary work or work for eight hours a day, five days a week. See 20 C.F.R. §§
2  404.1545(b)&(c), 416.945(b)&(c)(stating that when the Commissioner assesses a claimant's physical and
3  mental abilities, "we . . . determine your [RFC] for work activity on a regular and continuing basis"); SSR
4  96-8p, 1996 WL 374184, at *1 ("Ordinarily, RFC is an assessment of an individual's ability to do sustained
5  work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular
6  and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."); see also
7  Burch, 400 F.3d at 683 (applying the "regular and continuing basis" standard). Dr. Pashman stated that as
8  of November 20, 2004, plaintiff could return to work twenty hours a week, provided that she did not have
9  to lift or carry more than ten pounds or engage in "prolonged" sitting, standing, or walking. [AR 280].
10 While less restrictive than the limitations Dr. Pashman assessed for the one-year period beginning on
11 October 29, 2003, working twenty hours a week is not equivalent to working "8 hours a day, for 5 days a
12 week," as generally contemplated by the definition of RFC. See SSR 96-8p, 1996 WL 374184, at *7 &
13 n.7. Dr. Pashman estimated that plaintiff could return to work full-time as of May 1, 2005, provided that
14 she did not have to lift or carry more than fifteen pounds. [AR 280]. Plaintiff concedes that Dr. Pashman's
15 opinion indicates that she could perform sedentary work as of May 1, 2005 and therefore establishes that
16 she was not disabled on or after that date. [JS 5].

17 The ALJ articulated reasons for rejecting in Dr. Pashman's May 2004 disability opinion. First, he
18 said that it was inconsistent with a February 2004 letter from Dr. Pashman to Bryan Flyer, M.D., another
19 of plaintiff's treating physicians, and that "there are no progress records from Dr. Pashman showing an
20 increase in [plaintiff's] signs and symptoms" between February 26, 2004 and May 10, 2004. [See AR 27,
21 283, 652-727]. In his letter to Dr. Flyer, Dr. Pashman remarked that plaintiff was status post hemi-
22 laminectomy on October 29, 2003 for significant left L5 radiculopathy, and that she also had adult
23 idiopathic scoliosis. He added that plaintiff reported "today, that the radiculopathy is much improved." [AR
24 283]. He noted that plaintiff has "global body pain that is unrelated to the radiculopathy," and that if the
25 "two major curves" caused by her scoliosis "could be stabilized," that would help

26 > her neck and upper back pain because of the coronal plane decompensation. Clearly, at this
27 > point, though, the radiculopathy is better, for which she originally came to see me. I will
28 > return her to work without significant restrictions, and if she wants surgery on her adult

4

idiopathic scoliosis at some point, we will consider it for her.

[AR 283]. A contemporaneous examination report indicated that plaintiff complained of a pain level of 4 on a 1-to-10 scale. She reported that her pain "comes and goes," that she had some difficulty walking but walked better with a brace, and that she "is getting better." [AR 284]. Her physical therapy had been discontinued the week before. She was using a TENS unit but was not taking pain medication. [AR 284].

The apparent conflict between Dr. Pashman's two assessments is clear. In February 2004, he told Dr. Flyer that he was releasing plaintiff to work with no significant restrictions. Then, in May 2004, Dr. Pashman completed an employment-related form indicating that plaintiff was severely limited and unable to work at least through November 2004, and that she could work only part-time for several months thereafter.

Plaintiff disagrees with the ALJ's conclusion that the record did not contain progress reports showing a worsening of plaintiff's condition between February 2004 and May 2004. Plaintiff points to a Cedars-Sinai progress note dated March 9, 2004 showing that plaintiff reported periodic left leg pain and bilateral shoulder and neck pain, and that she was prescribed physical therapy. [AR 377]. A second progress note dated April 20, 2004 states that plaintiff reported a pain level of 7 on a 1-to-10 scale, radicular pain in the left lower leg, shoulder pain, and neck pain. [AR 375]. Aquatic therapy was prescribed. [AR 281, 374]. In January 2005, Dr. Pashman continued a prescription for physical therapy [AR 371] and concluded that "[d]ue to the relatively mild nature of her scoliosis, . . . corrective surgery is [not] indicated at this time. The patient is in agreement . . . ." [AR 497].

It appears that someone other than Dr. Pashman actually completed the March 2004 and April 2004 progress notes, but even if they are attributable to him, those reports do not undermine the ALJ's conclusion that there are no treatment notes supporting a material increase in plaintiff's signs or symptoms between February 2004 and May 2004. The record indicates that the substance of plaintiff's subjective complaints (periodic leg pain and ongoing shoulder and neck pain) did not change significantly during that period. [See AR 284, 374, 377]. Plaintiff rated the intensity of her pain incrementally higher in March 2004 and again in April 2004, but she also said that heat, ice, and aspirin helped the pain, and no pain medication was mentioned or prescribed. [AR 374, 377]. Furthermore, Dr. Pashman acknowledged that plaintiff had ongoing complaints of "global body pain" in February 2004, but that did not deter him from releasing her

to work without significant restrictions. [AR 283]. Plaintiff was receiving physical therapy until a week or two before Dr. Pashman wrote to Dr. Flyer, and she continued to undergo physical therapy in March 2004. [See AR 374-388]. By April 2004, she had been discharged from physical therapy, and aquatic therapy was prescribed instead for 4-6 weeks. [AR 374, 379]. In January 2005, another course of physical therapy was prescribed. Thus, plaintiff's therapy regimen remained quite stable. The ALJ permissibly concluded that none of Dr. Pashman's treatment records showed a material increase in plaintiff's signs or symptoms.

The ALJ also rejected Dr. Pashman's May 2004 disability opinion because "the most detailed examination report from the first half of 2004 is Dr. Sophon's March 22, 2004 consultative report," which "reveals findings consistent with a light exertional capacity." [AR 27, 230-234]. Dr. Sophon was an orthopedist. Unlike the March 2004 and April 2004 treatment notes cited by plaintiff, Dr. Sophon's examination report contains detailed physical and neurological findings. Dr. Sophon also obtained a history and reviewed medical records. Although his functional assessment is less restrictive than that ultimately adopted by the ALJ, the ALJ did not err in concluding that Dr. Sophon's March 2004 report contained much more detailed clinical findings than the March 2004 and April 2004 progress notes from Cedars-Sinai, and that Dr. Sophon's assessment contradicted Dr. Pashman's May 2004 disability opinion. See Thomas, 278 F.3d at 957 ("The opinions of non-treating or non-examining physicians may also serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record.").

The ALJ articulated specific, legitimate reasons for rejecting the controverted opinion of Dr. Pashman. Accordingly, plaintiff's contentions lack merit.

**Credibility determination**

Plaintiff contends that the ALJ failed to articulate legally sufficient reasons for rejecting the alleged severity of plaintiff's subjective symptoms. [See JS 12-23].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may

6

then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989)(same). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

Plaintiff contends that the ALJ impermissibly rejected her subjective testimony that she has significant limitations and pain as a result of her orthopedic impairments, ambulates with a cane, can stand for approximately one hour, sit for approximately thirty to forty-five minutes, and relies on use of a TENS unit, exercise, and spa treatments to alleviate pain. [See JS 12; AR 932-936].

The ALJ provided specific, clear, and convincing reasons supporting his finding that plaintiff's subjective complaints were not fully credible. [AR 32]. First, he said that the medical evidence regarding the nature and extent of plaintiff's orthopedic impairments did not corroborate the "major limitations" she alleged. [AR 32]. Contrary to plaintiff's assertions, the ALJ permissibly relied, in part, on the lack of medical evidence corroborating the alleged severity of her subjective symptoms and limitations. See Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."). That reason also was legitimate. In his February 2004 letter, Dr. Pashman indicated that plaintiff's left L5 radiculopathy was "much improved" following surgery in October 2003. [AR 283]. Plaintiff's ongoing subjective complaints of "global body pain," neck pain, and upper back pain related to her "mild" scoliosis did not prevent Dr. Pashman from releasing plaintiff to work with no significant restrictions. [AR 283, 497].

Plaintiff argues that another treating physician, Dr. Hymes, opined that plaintiff could sit for no more than one hour in a work day, and therefore that the ALJ was incorrect in saying that the medical evidence did not corroborate plaintiff's subjective symptoms. [AR 759]. Dr. Hymes, however, first examined

plaintiff in June 2007, long after expiration of her insured status on March 31, 2006, and he completed a functional assessment in December 2007, almost two years after plaintiff's date last insured. [AR 23, 757-764]. Dr. Hymes did not indicate that his assessment was intended to be retrospective. Furthermore, the ALJ rejected Dr. Hymes's opinion because the "few progress notes from him reveal minimal objective findings to support the severe limitations he ascribed to plaintiff." [AR 31]. Plaintiff does not challenge the ALJ's rejection of Dr. Hymes's opinion. The ALJ found that the medical evidence as a whole did not corroborate plaintiff's subjective complaints, and that finding is specific and convincing.

Second, the ALJ rationally discounted the significance of plaintiff's use of a cane because "no physician of record has found that an assistive device is necessary for [plaintiff]." [AR 32]. In December 2003, Dr. Pashman signed an "Orthopedic Physical Therapy Program Prescription." [AR 290]. He did not check the box marked "assess for assistive device," nor did he otherwise indicate that an assistive device was in use or was warranted at that time. [See AR 290-297]. A progress note dated February 26, 2004 says that plaintiff reported that she could walk better with a "brace," but on the same day, Dr. Pashman wrote to Dr. Flyer that he was releasing plaintiff to work without significant restrictions. He did not mention any use of, or need for, a brace or an assistive device in that letter. [AR 283-284]. Plaintiff's use of a "straight cane" was noted in a March 2004 progress note from Cedars-Sinai. [AR 377]. However, Dr. Sophon, the consultative orthopedist, reported in his March 2004 examination report that plaintiff "uses no assistive devices to ambulate," was able to get on and off the examining table without difficulty, rose from a chair without difficulty, had a normal gait, and could walk on her tiptoes and heels without difficulty. [AR 231]. The record as a whole supports the ALJ's conclusion that plaintiff's use of a cane was not medically necessary, and therefore that its use did not credibly suggest a more restrictive RFC than the one he assessed. See Verduzco, 188 F.3d at 1088 (holding that the ALJ permissibly discounted the claimant's subjective testimony where, among other things, the claimant used a cane at the hearing "but none of his doctors had ever indicated that he used or needed to use an assistive device in order to walk," and the claimant also stood up swiftly and without apparent difficulty during the hearing).

The ALJ acknowledged that plaintiff made "regular and frequent" visits to doctors, but he also observed that she had few or no emergency visits and only brief hospitalizations related to her lumbar surgery on October 29, 2003 and her left knee surgery on January 18, 2006. The ALJ noted that plaintiff

said she was allergic to several medications. Her treatment consisted primarily of a TENS unit, exercise, and spa treatments. [AR 933-936]. Although plaintiff's relatively limited need for hospitalization or emergency treatment, standing alone, is not highly probative, it is a factor that the ALJ properly considered in determining that plaintiff's pain and subjective symptoms were not disabling. Fair, 885 F.2d at 603-604 (noting that disability insurance benefits are not for those who experience nondisabling pain, and holding that the ALJ permissibly considered discrepancies between the claimant's allegations of "persistent and increasingly severe pain" and the nature and extent of treatment obtained).

The ALJ articulated specific, convincing reasons for his credibility assessment, which is reasonable and supported by substantial evidence. Accordingly, the ALJ's finding will not be disturbed. See Rollins, 261 F.3d at 857.

### Conclusion

For the reasons stated above, the Commissioner's decision is supported by substantial evidence and reflects application of the proper legal standards. Accordingly, defendant's decision is **affirmed.**

**IT IS SO ORDERED.**

April 12, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge